UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN PASKOWITZ,<br><br>               Plaintiff,<br><br>v.<br><br>EMCORE CORPORATION, CLETUS C. GLASNER, BRUCE GROOMS, JEFFREY J. RONCKA, DAVID ROGERS, and MATTHEW VARGAS,<br><br>               Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934 |

Plaintiff Susan Paskowitz ("Plaintiff"), by and through her undersigned attorneys, submits this Complaint ("Complaint") against the defendants named herein. Plaintiff alleges upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, as follows:

**I.    NATURE OF THE ACTION**

1.    This is an action brought by Plaintiff against EMCORE Corporation ("EMCORE" or the "Company") and members of EMCORE's board of directors (the "Board" or the "Individual Defendants" and together with EMCORE, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger transaction through which EMCORE will become a wholly owned subsidiary of Velocity One Holdings, L.P. ("Velocity One") (the "Proposed Merger").

2.    On November 7, 2024, EMCORE entered into an Agreement and Plan of Merger with Velocity One, Aerosphere Power Inc., and Velocity Merger Sub, Inc. (the "Merger Agreement"), pursuant to which EMCORE stockholders will be entitled to receive $3.10 in cash

for each share of common stock they own (the "Merger Consideration").

3. On January 24, 2025, in order to solicit EMCOER shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy).

4. The Proxy contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for EMCORE, (ii) the valuation analyses performed by EMCORE's financial advisor, Craig-Hallum Capital Group LLC ("Craig-Hallum"); (iii) potential conflicts of interests faced by Craig-Hallum; (iii) the peculiar and unexpected timing of the termination of the Company's former Chief Executive Officer ("CEO") and director, Jeff Rittichier; and (iv) certain interests of the Radoff Group and Bradley L. Radoff in the Proposed Merger and their involvement in the sales process.

5. The special meeting of EMCORE shareholders to vote on the Proposed Merger is scheduled on February 27, 2025 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise her corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to EMCORE's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

8. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. In particular, the Exchange Act allows for nationwide service of process and Defendants solicited proxies in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the acts and transactions giving rise to the violations of law alleged herein, including the solicitation of proxies in this District, occurred in the Eastern District of New York, and the omissions and activities of the Company have been directed at, and have injured, Plaintiff who resides in this District.

## III. PARTIES

### A. PLAINTIFF

10. Plaintiff Susan Paskowitz is currently, and has been at all relevant times, a stockholder of EMCORE.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

8. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. In particular, the Exchange Act allows for nationwide service of process and Defendants solicited proxies in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the acts and transactions giving rise to the violations of law alleged herein, including the solicitation of proxies in this District, occurred in the Eastern District of New York, and the omissions and activities of the Company have been directed at, and have injured, Plaintiff who resides in this District.

## III. PARTIES

### A. PLAINTIFF

10. Plaintiff Susan Paskowitz is currently, and has been at all relevant times, a stockholder of EMCORE.

**B.  DEFENDANTS**

11. Defendant EMCORE is a New Jersey corporation with its principal executive offices located at 450 Clark Drive, Budd Lake, New Jersey 07828. The Company's common stock trades on the Nasdaq Capital Market under the ticker symbol "EMKR." EMCORE is a provider of advanced inertial navigation products serving the aerospace and defense, commercial and industrial markets. According to the Company's website, EMCORE is a "pioneer and leading innovator of fiber optic, ring laser gyro, and MEMS technologies for a broad range of navigation applications."

12. Defendant Cletus C. Glasner is, and has been, Chairman of the Board and a director of the Company at all times relevant hereto.

13. Defendant Bruce Grooms is, and has been, a director of the Company at all times relevant hereto.

14. Defendant Jeffrey J. Roncka is, and has been, a director of the Company at all times relevant hereto.

15. Defendant David Rogers is, and has been, a director of the Company at all times relevant hereto.

16. Defendant Matthew Vargas is and has been interim Chief Executive Officer and a director of the Company at all times relevant hereto.

17. Collectively, the defendants identified in paragraphs 12-17 are referred to herein as the "Individual Defendants."

**IV.  SUBSTANTIVE ALLEGATIONS**

**A.  BACKGROUND REGARDING THE PROPOSED MERGER**

18. EMCORE was established in 1986 as a New Jersey corporation and held its initial public offering on March 11, 1997. In its nearly three decades as a public company, EMCORE

4

has experienced a material decline in value. As of August 12, 2024, EMCORE's closing stock price was just $1.00 –a stark contrast to the Company's all-time high of $2,500.55 reached on February 23, 2000, during which year EMCORE reached a market cap of approximately $2 billion. The last several years have been marked by significant price and volume volatility in the Company's stock and EMCORE has faced numerous challenges related to its operations and business outlook.

19. The Company commenced a restructuring program in 2023 to discontinue its broadband business segment (cable television, wireless, sensing and chips), discontinue its defense optoelectronics product line and fully transition its business to the aerospace and defense sectors. The restructuring was expected to reduce annual costs and expenses by approximately $12 million through a reduction in workforce and consolidation of its facility space in Alhambra, California. The transition and restructuring which were aimed at achieving adjusted cash flow break even by September 2024, have not been seamless. There has been a significant decline in the Company's stock price amongst other notable setbacks, and changes in Company management and Board composition may have left the Company rudderless at a time when strong leadership was critical.

20. In June 2024, EMCORE was forced to notify its investors that it had received allegations of default by its lenders under its credit agreement dated August 9, 2022 (the "Credit Agreement"), claiming that EMCORE had failed to meet certain financial reporting requirements and other provisions. As a result of these allegations, the administrative agent exercised its right to charge an increased rate of 18% beginning May 1, 2024, and requested the appointment of a Chief Restructuring Officer.

21. Simultaneously, EMCORE reported 2Q 2024 fiscal results, revealing revenue of $19.6 million, a decrease from the previous quarter's $24.1 million and an operating loss of $6.9

million.  By September 2024, the Company's market cap briefly dipped under $9 million, and significant restructuring and related costs had negatively impacted financial performance.  Even still, there were encouraging signs.  In Q3 2024 EMCORE achieved a book-to-bill ratio of 1.24, indicating strong demand and order intake, the Company successfully paid off all outstanding obligations under its Credit Agreement, improving financial flexibility, and the Company had notable revenue growth of 563.28% in the preceding twelve months as of Q2 2024. During the Company's Q3 2024 earnings call, when asked about the sustainability of bookings going forward, EMCORE Interim CEO, Matthew Vargas noted that "[t]he pipeline is strong, with significant demand from international and domestic markets."  EMCORE's promising outlook as it emerged from the restructuring did not go unnoticed.

22. On September 30, 2024, Mobix Labs, Inc. ("Mobix") filed a Schedule 14A with the U.S. Securities and Exchange Commission ("SEC") announcing that it had submitted an all-cash offer to acquire all of EMCORE's outstanding shares for $3.80 per share.  Mobix's proposed offer represented a ***more than 200% premium*** over EMCORE's stock price as of September 27, 2024.  On October 1, 2024, EMCORE filed a Form 8-K attaching its press release confirming receipt of the Mobix proposal and reassuring investors that "[c]onsistent with its fiduciary duties and in consultation with the Company's financial and legal advisors, the Company's Board of Directors will carefully review Mobix's proposal to determine the course of action that it believes is in the best interest of the Company and its shareholders." *See* Exh. 99.1 to Form 8-K dated October 1, 2024.  The press release also assured investors that the Board "continues to evaluate a range of strategic and financial options to enhance shareholder value." *Id.*

23. Despite this reassurance, on November 8, 2024, just a little more than thirty days after receiving the Mobix proposal, the Company announced that its Board had entered into the

Merger Agreement with a buyer unrelated to Mobix for an all-cash offer significantly below Mobix's $3.80 offer. Specifically, the Merger Agreement provides that subject to certain "customary closing conditions" including, approval of the proposed transaction by EMCORE's shareholders, each share of EMCORE common stock will be converted into the right to receive $3.10 per share in cash, EMCORE will become will become a wholly owned subsidiary of Velocity One and the Company's common stock will be delisted from the Nasdaq Stock Market LLC. The Proposed Merger is expected to close during the quarter ending March 31, 2025.

24. Although the Merger Consideration is $0.70 per share below that offered by Mobix, the Company's Form 8-K, filed November 8, 2024, states that the Board "unanimously determined that the transactions contemplated by the Merger Agreement, including the Merger, are advisable, fair to, and in the best interests of the Company and the Company's shareholders" and recommends that the Company's shareholders vote to adopt and approve the Proposed Merger.

25. The joint press release issued by EMCORE and Velocity One announcing the Proposed Transaction states, in relevant part:

> FAIRFIELD, New Jersey, Nov. 08, 2024 (GLOBE NEWSWIRE) -- Velocity One, a newly formed aerospace manufacturing holding company, announced today it has signed a merger agreement with EMCORE Corporation (Nasdaq: EMKR) ("EMCORE"), a provider of inertial navigation solutions to the aerospace and defense industry. Under the agreement, EMCORE will become a wholly owned subsidiary of Velocity One. The purchase price of $3.10 per share in cash, backed by Charlesbank Capital Partners ("Charlesbank"), a private investment firm with more than $22 billion of total assets*, has been unanimously approved by the EMCORE board of directors.
>
> Velocity One will now have three industry leaders operating under its wing. In addition to EMCORE, it will comprise Cartridge Actuated Devices, Inc. ("CAD"), a 50-year veteran designer and manufacturer of energetic devices, and Aerosphere Power, a manufacturer of power system solutions for commercial and military aerospace, military ground vehicles, and UAV applications.
>
> "We are excited to bring our playbook to EMCORE, as well as decades of experience operating aerospace and defense manufacturing and engineering

7

businesses and optimizing their efficiency and profitability," said John Borduin, CEO of Velocity One. "EMCORE has excellent technology and offers a large product portfolio. We believe this, combined with our industry experience and shared customer portfolio, puts EMCORE on a new trajectory for growth. With Charlesbank's investment, EMCORE, CAD, and Aerosphere Power's businesses can align and be poised for growth while focusing on our collective core philosophies."

"We see a tremendous opportunity to bring together three leading aerospace manufacturing businesses to create a compelling new player in the market, and EMCORE's highly engineered proprietary products will be key to driving the platform's overall success," said Brandon White, Managing Director at Charlesbank. "Velocity One's talented and motivated management team has the industry expertise, entrepreneurial talent, and reputation necessary to drive meaningful growth at scale, and we remain excited to partner closely with them to execute our shared vision for the future of each business."

Matt Vargas, CEO of EMCORE said, "This merger underscores our commitment to our domestic and international customer base, including strengthening relationships with and generating synergies across a range of high priority U.S. and NATO defense programs and industrial partners served by all three companies. By combining our strengths with those of Velocity One, we believe EMCORE will be better positioned and resourced to address global customers' evolving needs and deliver superior solutions. We look forward to the future as part of the Velocity One team."

**B.    THE PROXY OMITS MATERIAL INFORMATION**

26. On January 24, 2025, the Defendants filed a materially incomplete and misleading Proxy with the SEC. The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to EMCORE's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for EMCORE's shareholders to make an informed decision in connection with the Proposed Merger.

**1.    MATERIAL OMISSIONS CONCERNING THE PROCESS LEADING TO THE PROPOSED MERGER**

27. The Proxy is omissive because fails to disclose material information concerning the sales process conducted by the Company and the events leading up to the Proposed Merger.

Specifically, the Proxy fails to disclose the following: (a) Whether the confidentiality agreements entered into by the Company with Velocity One differed from the confidentiality agreements entered into between the Company and any other interested third parties; (b) all specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Velocity One, would fall away; and (c) any and all communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

### 2.  *MATERIAL OMISSIONS CONCERNING THE RADOFF GROUP'S INTEREST IN THE PROPOSED MERGER AND THE TERMINATION OF CEO RITTICHIER*

28.  With respect to the Radoff Group (which consists of the Radoff Family Foundation and Bradley L. Radoff), which appointed Mr. Cletus C. Glasener (who currently serves as chairman of the Board) and Mr. Jeffrey J. Roncka (who currently serves as a member of the Board and as the chair of the Strategy Committee) as its designees, the Proxy fails to disclose and should be supplemented to disclose: (a) Communications between and among the Radoff Group and EMCORE's Strategy Committee concerning or advocating the Proposed Merger or a transaction of this nature, at this time; (b) the Radoff Group's interest in the Proposed Merger, and its potential conflicts of interest, including that the aggregate purchase price of the 3,420,517 shares directly owned by Mr. Radoff (who engineered the appointment of key directors Glasener and Roncka who formed a "group" with Radoff)  is approximately $1,719,963, including brokerage commissions (Schedule 13D/A, filed March 6, 2024), and that Mr. Radoff stands to benefit by approximately 500% from the Proposed Merger; (c) any communications between the Radoff Group and/or Bradley L. Radoff or its designees, regarding the desirability of, the timing of a corporate sale, or the pricing of such a sale in accordance with Section 2(C)(i) of the Cooperation Agreement or

9

otherwise; (d) any communications between the Radoff Group and/or Bradley L. Radoff or its designees, on the one hand, with any member of the Board or EMCORE's management, on the other, regarding the termination of Mr. Rittichier or the desire for a corporate sale, and the timeframe for that sale, in accordance with Section 2(C)(i) of the Cooperation Agreement or otherwise; and (e) any communications between the Radoff Group and/or Bradley L. Radoff and Craig-Hallum concerning the desirability of a corporate sale, the timeframe for that sale, and/or corporate valuation.[1]

29. With regard to the peculiar timing of the termination of former CEO and director Mr. Rittichier, the Proxy fails to disclose and should be supplemented to disclose: (a) The reasons for (and circumstances of) the unexpected termination of Mr. Rittichier on May 8, 2024, while EMCORE was actively engaged in efforts to raise capital and explore a potential sales transaction or other business alternatives, including disclosure of any disagreements expressed by Mr. Rittichier regarding Company strategy or valuation issues, and any disagreements he many have had with the Radoff Group members or its designees; (b) discussions by the Board regarding the termination of Mr. Rittichier in his role as a director; and (d) disclosure of Board discussions regarding Article Fifth, Paragraph D of EMCORE's Certificate of Incorporation which states:

> Notwithstanding any other provisions of this Restated Certificate of Incorporation or the By-Laws of the Corporation (and notwithstanding the fact that some lesser percentage may be specified by law, this Restated Certificate of Incorporation of the Corporation or the By-Laws of the Corporation), any director or the entire Board of Directors of the Corporation may be removed at any time, but only for cause and only by the affirmative vote of the holders of at least a majority of the outstanding shares of Capital Stock of the Corporation entitled to vote generally in the election of directors (considered for this purpose as one class) cast at a meeting of the shareholders called for that purpose.[2]

---

[1] Any such communications would violate Section 2(C)(i) of the Cooperation Agreement and must be disclosed.

[2] *See* Certificate of Amendment to the Restated Certificate of Incorporation, dated March 19, 2018,

### 3. MATERIAL OMISSIONS CONCERNING THE COMPANY'S FINANCIAL PROJECTIONS

30.     The Proxy also omits material information regarding the financial projections for EMCORE and relied upon by Craig-Hallum in its valuation analysis. The Proxy explains that in "arriving at its opinion," Craig-Hallum reviewed "the detailed financial projection model for the years ending September 30, 2025 through 2027 approved by the Board of Directors on September 12, 2024 and the detailed projection model for the years ending September 30, 2028 through 2029 provided by the management of EMCORE on October 4, 2024." Proxy at 84. However, the Proxy does not disclose and should be supplemented to disclose: (a) Revenue, including the inputs, metrics, and assumptions used to calculate same; (b) Total COGS, including the inputs, metrics, and assumptions used to calculate same; (c) Gross Profit, including the inputs, metrics, and assumptions used to calculate same; (d) Total Operating Expenses, including the inputs, metrics, and assumptions used to calculate same; (e) Operating (Loss) Income, including the inputs, metrics, and assumptions used to calculate same; (f) EBITDA Adjustments, including the inputs, metrics, and assumptions used to calculate same; (g) Adjusted EBITDA, including the inputs,

---

attached as Exhibit 3(i).4 to EMCORE's Form 10-K filed with the SEC on January 14, 2025. It has long been the law of New Jersey that if action is taken that will remove a director prior to his term's end the "board acts judicially, and is without power to remove him for cause without giving him a hearing with reasonable opportunity to prepare." *Costello v. Thomas Cusack Co.*, 96 N.J. Eq. 83, 89, 124 A. 615 (1922). A similar rule exists in Delaware. *See Superwire.com, Inc. v. Hampton*, 805 A.2d 904, 912 (Del. Ch. 2002) ("A 'for cause' removal of a director [of a Delaware corporation] requires that the individual be given (i) specific charges for his removal, (ii) adequate notice, and (iii) a full opportunity to meet the accusation. The same is true whether the action is taken at a meeting of stockholders or by written consent."). The circumstances here, which left EMCORE suddenly bereft of experienced C suite leadership, would have weakened the hand of any director who opposed selling EMCORE at this price, or at this time, and would have increased the temptation to arrange a prompt sale, one of the major beneficiaries of which is the Radoff Group (a fact not evident in the Proxy). Voting stockholders should be informed of these unusual circumstances, unusual pressures, and apparent procedural irregularities.

metrics, and assumptions used to calculate same; and (h) Adj. EBITDA Margin, including the inputs, metrics, and assumptions used to calculate same.

31. The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections. This information is necessary to provide a complete and accurate picture of the sales process, Craig-Hallum's financial analyses, the Company's true value and to ensure that the shareholders have all of the material information necessary to cast a fully informed vote on the Proposed Merger.

### 4. MATERIAL OMISSIONS CONCERNING CRAIG-HALLUM'S FAIRNESS OPINION

32. The Proxy describes Craig-Hallum's fairness opinions and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information by including the fairness opinion and valuation analyses among the factors considered in recommending the Proposed Merger. Proxy at 81. However, the summary of Craig-Hallum's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, EMCORE's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to EMCORE's shareholders.

33. With respect to the *Comparable Public Company Analysis* (Proxy at 87), the Proxy fails to disclose: (a) The inputs, metrics, and assumptions used to determine the Enterprise Value ("EV")/ CY 2024E Revenue utilized for each of the comparable companies; (b) the inputs, metrics, and assumptions used to determine the EV/ CY 2025E Revenue utilized for each of the comparable companies; and (c) The inputs, metrics, and assumptions used to determine the EV/ CY 2024E

Adjusted EBITDA utilized for each of the comparable companies.

34. With respect to the *Premiums Paid Analysis* (Proxy at 88), the Proxy fails to disclose: (a) The 18 specific transactions compared; (b) the "scope and parameters of the selected M&A transactions" utilized by Craig-Hallum in its "professional judgment;" (c) the specific premiums paid for each of the transactions considered; (d) the closing price on the last trading day prior to announcement of the transaction or first reference in the public news media about the transaction (the "*1-Day Price*") transaction utilized; (e) the closing price 7 calendar days prior to announcement of the transaction or first reference in the public news media about the transaction (the "*1-Week Price*") for each transaction utilized; and (f) the closing price 30 calendar days prior to announcement of the transaction or first reference in the public news media about the transaction (the "*1-Month Price*") for each transaction utilized.

35. With respect to the *Precedent M&A Transactions Analysis* (Proxy at 89), the Proxy fails to disclose: (a) The specific date on which each precent transaction closed; (b) the Enterprise Value of the target companies in each of the precedent transactions analyzed; (c) the aggregate value of each of the precedent transactions analyzed; (d) the inputs, metrics, and assumptions used to determine the EV/ LTM Revenue multiples for each of the precedent transactions analyzed; and (e) the inputs, metrics, and assumptions used to determine the EV/ Estimated NTM Revenue multiples for each of the precedent transactions analyzed.

36. With respect to the *Discounted Cash Flow Analysis* (Proxy at 90), the Proxy fails to disclose: (a) The inputs, metrics, and assumptions used to determine the revenue multiples range of 0.3x to 0.5x utilized; (b) the inputs, metrics, and assumptions used to determine the terminal revenue multiples of 1.5x to 3.5x utilized; (c) the inputs, metrics, and assumptions used to determine the discount rate range of 15.8% to 23.8% utilized; and (d) the weighted average cost

of capital for the Company utilized.

### 5. MATERIAL OMISSIONS CONCERNING CRAIG-HALLUM

37. With respect to Craig-Hallum itself, the Proxy does not disclose: (a) Any and all investment banking and financial advisory services Craig-Hallum provided to Velocity One in the two years immediately preceding the Proposed Transaction, and any compensation Craig-Hallum received for any work performed for Velocity One; (b) the details concerning the Craig-Hallum conflicts of interest disclosed to the EMCORE Board;[3] and (c) more prominent disclosure of the $1.66 million fee Craig-Hallum is to receive contingent upon success of the Proposed Transaction, which presently is buried on page 91 of the Proxy, and disclosure that this fee was indeed *contingent,* a fact which is not clear from the language in the Proxy.[4]

38. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and

---

[3] On September 27, 2024; "[A] representative of Pillsbury summarized responses provided to EMCORE by Craig-Hallum with respect to potential conflicts of interest-related disclosures Craig-Hallum had provided to EMCORE with respect to Craig-Hallum's previous activities and engagement (if any) with respect to each bidder." Proxy at 68. On November 7, 2024: "[T]e Board of Directors was informed that Craig-Hallum had provided confirmation in writing that there had been no changes with respect to its previous conflict disclosures to the Board of Directors since last provided on September 27, 2024. The Board of Directors discussed Craig-Hallum *and their previously provided conflict disclosures* and re-affirmed that the disclosed relationships between Craig-Hallum and the bidders did not rise to the level of presenting a conflict of interest for Craig-Hallum with respect to any of the bidders, such that Craig-Hallum could continue to serve as the exclusive financial advisor to EMCORE." Proxy at 77 (emphasis added).

[4] Craig-Hallum advised the Strategy Committee. The contingent nature if the financial advisor's relationship, if indeed it was contingent, would be material and may be viewed negatively by voting stockholders. *Cf. In re Om Group, Inc. Stockholders Litig.*, 2016 Del. Ch. LEXIS 155, at *52-54 (Del. Ch. Oct. 12, 2016) (amount and the contingent nature of the fee arrangement should be disclosed, so that the stockholders are "not misled as to [the financial advisor's] incentives."); *In re Tele-Commc'ns, Inc. S'holders Litig.*, No. 16470, 2005 Del. Ch. LEXIS 206, at *41 (Del. Ch. Dec. 21, 2005) (contingent compensation of the financial advisor "creates a serious issue of material fact, as to whether DLJ (and DLJ's legal counsel) could provide independent advice to the Special Committee.").

is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

V.     **PLAINTIFF'S CLAIMS**

## COUNT ONE
(VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AGAINST ALL DEFENDANTS)

39.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

43.     Defendants have issued the Proxy with the intention of soliciting EMCORE's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for EMCORE, and (ii) Craig-Hallum's

15

valuation analyses performed in support of its fairness opinion.

44. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to EMCORE's shareholders, though they could have done so without extraordinary effort.

45. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Craig-Hallum reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Craig-Hallum as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete. Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question Craig-Hallum as to its derivation of fairness, and be particularly attentive to the procedures followed in

16

preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as EMCORE's officers and directors.

47. EMCORE is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

48. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of EMCORE's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT TWO**
**(VIOLATIONS OF SECTION 20(a) AGAINST ALL INDIVIDUAL DEFENDANTS)**

49. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50. The Individual Defendants acted as controlling persons of EMCORE within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of EMCORE, and participation in and/or awareness of EMCORE's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of EMCORE, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of EMCORE, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other or further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 13, 2025

Respectfully submitted,

**LAW OFFICES OF BETH A. KELLER, P.C.**

*/s/ Beth A. Keller*
Beth A. Keller
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
Telephone: (914) 752-3040
Facsimile: (914) 752-3041
Email: bkeller@keller-lawfirm.com

*Attorneys for Plaintiff*

19